All right, we're ready for our third case, number 19-13626, Robin and Lori Fisher v. United States. Mr. Greenlee. Good morning, Your Honors, and may it please the Court. My name is Andrew Greenlee, and I represent Robin and Lori Fisher. Your Honors, this case presents a single issue for review, and that is whether Florida's recreational use statute bars business visitors, such as the Fishers, from bringing suit. We believe that ordinary principles of statutory interpretation compel the answer to be no. I'd like to start, if I could, with the structure of the statute. Before you do that, Mr. Fisher was injured in a completely public area? Yes, Your Honor. So how is he a business invitee or visitor at the place of injury? Well, you can be a business invitee and then go to a place where you are not a business invitee anymore and everybody is allowed. So does the location of the injury matter for purposes of your argument or not? Your Honor, no, we don't think that it does matter. I mean, the fact that we're here under the recreational use statute, it's always going to be the case that it's open to members of the public. But there are a couple points on this particular issue that I'd like to rely on. And the first is that at the Tables Beach, they occupied a different status because they could rent the pavilion. And what matters is the entirety of the base. They had access to the entirety of the base. And so they could enter all sorts of different places. I recognize that our case would be far stronger if they were, say, at the Beach House or one of these other places where the public wasn't invited. But that would be clear cut. Again, we think that based on the structure of the statute, that the legislature did not intend to displace the common law. Can I ask you a quick question before we get to structure? I guess I tend to think in statutory interpretation terms that like first let's focus on the four corners of the provision at issue. And then we'll sort of abstract out a little bit to see what else is going on in the structure of the statutory scheme more generally. But with respect to this statute itself, I mean, it seems to me to check all the boxes. You've got an owner, check, who's provided the public with, you know, access to an area, check. For outdoor recreational purposes, check. And then the statute says no duty of care, no duty of care, no duty of care. Why is that just not dispositive? Okay, our argument on the text is as follows. And I'm going to read the provision at issue and I'll quote it. A landowner who quote provides the public with an area for outdoor recreational purposes owes no duty of care to keep that area safe for entry and use by others, or to give warning to persons entering on or going on to that area for any of any hazardous condition structures activities. So the key words in the section from our perspective are the public and by others. And those are words that suggest that immunity applies to external entrance onto the land or strangers onto the land. So, others stands in contradistinction to people who have a business on the land there in the first place. So that's our argument with the text. And I would also, the very next provision, section 375.25. Can I just, can I just push back briefly, I mean, I guess as I read that phrase, I would think that others stands in contradistinction to the owner. It's like the owner has no duty with respect to the world is the way that sounds to me. Right. Well, again, we view that business visitors are an extension of the owner. For instance, if, and I'll just give like setting aside, you know that the statutory interpretation issue. If you're, and just purely on common sense, if your boss sends you on to the land, and you get hurt. You could reasonably ask, why did he put me in harm's way, why didn't he warn me that there was this latent defect in the land. But if a member of public enters a member of the general public enters the land without permission has no relationship with John Doe property owner, then that person can't complain, he's on his own, he can't complain when he gets hurt. I'd also like to, there's another, the very next statutory provision 375.251.2b. This is, this is important, notwithstanding the inclusion of the term quote public in this subsection and subsection one, an owner or lessee who makes available to any person in an area primarily for the purposes of hunting, fishing, or wildlife viewing is entitled to the limitation of liability and then it goes on, but provided that the lessee provides a written notice of this provision to the, to the person before or at the time of entry on the area or posted conspicuously on the area. Okay, so they recognize that that it's primarily focused on members of the public. Right. But if you open up your land if you invite people, hey, you can go fishing, you can go hunting, you can view wildlife here. You actually because it would, it would upset their expectation they might think hey I'm an invitee here, so you have to post that notice on the property or actually give the notification of the purpose to the person who enters the property. So that recognizes that that term public, it has meaning and it applies to people who are external. And again, I think that the strongest point in our favor is the fact that in the very next subsection, subsection three, they say this applies across the board to all entrants who be they, you know, licensees, invitees, trespassers, it applies across the board. And in order to make sense of that provision, you have to conclude that it was an intentional policy choice. It wasn't an oversight that they omitted from the previous subsection, the one that's at issue in our case, they omitted that language and the only way to make sense of its inclusion in the following subsection is to conclude that they didn't intend to displace the common law, when they enacted it. I mean, I guess. Go ahead, go ahead. No, that's okay. Just a quickie I guess on that score. I mean, I guess your argument is that by including the, you know, invitees, licensees and trespassers language in sub three, that sub two means to exclude someone. Right. So as you said it doesn't, it doesn't include everyone in the same way that sub three does so it must exclude someone. So but even if we grant you that premise, why is it that the excluded someone would be business invitees sort of a sub sub category of one of the three mentioned in sub three why wouldn't we conclude instead, more realistically it seems to me that want that the excluded category would be either invitees as a whole licensees as a whole, or trespassers as a whole. Why just your clients basically that's my question. Well we primarily we think that business invitees or business visitors is the closest analogy to what they, the status of the occupied, but also to answer your question more directly. Public invitees, you know, after reviewing the briefing, I sort of agree with the government if you look at the definition of what a public invitee is it's someone who comes in and is invited onto the property for the use, you know, a member of the general public who comes in and who's invited for that particular use of the properties held open to. So if the court were to say you know public invitees are that they don't trigger the immunity under the statute it really would kind of gut the statute. By contrast with business visitors. I mean, suppose the person is a janitor who comes on of no volition of his own without any. He has to come on to the land. We think that that person, and granted that you know that this would be an easier case from our perspective if they were there as a, as a consequence, direct consequence of that they had to be in Tables Beach at that point. But having said that, we do think that when the landowner makes it makes it available to you, then that person, you know, it comes with certain expectations and the expectations are that your land that the, your boss is not going to going to put you in harm's way. Um, let me ask you, let me ask you a different question Mr Greenlee you say that all of this has to be considered with the backdrop of the principle that a statute that is in derogation of the common law needs to be strictly construed right. Correct. But you have a provision that the Florida legislature has left intact since the 1960s, and it's section 375.3, excuse me, 375.061. And it says that the provisions of this act, which includes the statute we're dealing with shall be liberally construed in a manner to accomplish the purpose of thereof. How does that statute play into your derogation of the common law argument, if at all. Two quick points on my time is running low. No, you can you can finish answering the question. Okay. First, we think again, you know, I'll return to my main point that there's nothing inconsistent with our reading of the statute and the purpose of the statute, because it immunize it still immunizes landowners from the from suit. Let's say that 100 people enter the property 99% of those people are 99 of those people. Let's say 100 people get hurt on the property in a given year. If 99 of those people are members of the public, then the, the, the landowner would still be immunized from suit 99% of the time and so only one of the person, one person only could be could bring the suit so there is, it's consistent with the purpose of the statute. In other words, um, so it's just not correct to say that the landowner would get no benefit from the statute, you will be immunized from suit. Any, any suit brought by a member of the public, he would gain immunity from that, but it's only people who under the common law would have would have an expectation that they would be treated with a higher duty of care. Only those people could bring suit and answer your question more directly, to the extent that the court considers that that legislative purpose. I think it's really an equipoise with the other canon of statutory interpretation one says you have to construe You've got all of your time left for rebuttal. Mr. Greenlee thank you. Thank you very much. Mr. Randy. Todd Grady appearing on behalf of the United States may please the court. I want to address first on the, the fishers there at the time Mr Fisher sustained his accident, the, there was no fee or revenue generated as associated with the public beach, where he sustained his injury. So, the record makes that absolutely clear when I say the record I mean the declaration of Jay black located at 11 dash one document 11 dash one. But in any event, the bottom line is the recreational use act is a broad grant community to landowners who make their property available for public use. And it applies to all persons using these areas. The legislature makes it very clear in the statement of legislative purpose in section one, where it says it. The purpose is to encourage vendors to make their public their land available to for public use by limiting their liability to persons using these areas. Let me, let me, I, I think I am generally sympathetic to your ultimate result. But there is an example that Mr Greenlee mentioned that gives me pause. So a landowner who is covered by this provision 375.2512 a tells its employees to go to a completely public area and pick up trash. And those employees get injured. Putting aside workers compensation. Those employees don't have a remedy because of this statute against the landowner. The statute offers a broad grant of immunity to lenders who make the property available to the public for recreational use, and it allows for only one statutory exception and that's the exception in section to see for property that either that is revenue generating and then and that's not an issue in this case. So, I think in the in your, in your honors hypothetical problem that issue probably would be addressed via workers competent the employee was was taking care of trash and his owners, it is the letter. I'll make the hypothetical a little bit harder for you. I'll try to squeeze you a bit. Okay, so it's not a statutory employee. Okay. It's a contractor. The landowner the landowner wants to pretty up a facility that it opens to the public, and it hires some sort of company to provide advice on how to beautify the premises. Right. And that entity has to send people on the premises to see what recommendations are going to make. And when they go into. I don't know let's say a public, you know, facility where I don't know movies are shown for free. The floor gives it. And those people are injured, no coverage. Well, Your Honor, the Florida legislature in enacting section to a expressly rejected the duty of care that would otherwise be do an invitee whether the invitee is a member of the public and therefore is a public invitee, or whether that person is a unless the property issue generates revenue. There are no cases in the Florida courts on this provision right. Not that address this issue no Your Honor most of the cases both federally and in the state address the revenue exception to see and that is the extent to which the property and issues, either does or does not generate revenue because of the property does generate revenue either by way of entry fees or otherwise, then the immunity provided by the statute does not apply so most of the litigation seems to concern that in fact in two cases in this court, Claire versus United States and Fernandez versus United States, the litigation concerned, the application of that provision to see, but it bears mentioning that even in connection with that issue. This court in the floor Supreme Court in Abedin focused heavily on the overarching purpose for the statute and sexual counsel, let me interrupt. Yes, Your Honor, in that hypothetical involved in the contractor. The cause of action would arise out of the contract. Yes, Your Honor, that's what the drive would have nothing whatsoever. I think myself have nothing whatsoever to do with this statute. Yes, Your Honor. Whether or not under the contract, the, the owner agreed to identify the contractor for injuries to employees in the course of the employment. Yes, Your Honor. It would be a bargaining tip. Yes, thank you Your Honor that's that's exactly right. Thank you. But but apart from that, we're left. Well, the case is construing the statute all focus intently on two things one, the overarching purpose for the statute and section one, and the provision this court has already referenced that Florida statutes 375.061, which provides that the provisions of the overarching act should be afforded liberal construction to accomplish their, their end. And here, the, the, the overarching purpose is to encourage landowners to make their private their private property publicly available to the members of the public for recreational use. And the, the way the legislature encourages that end is by granting by affording the such landowners a broad grant of immunity from suit by by anyone. I mean, like I said I think it's very, very telling. Good, Mr. Randy given the absence of case law from Florida. Should we consider certifying the question to the Florida Supreme Court. Well, Your Honor, this court certainly could do that but I do think the grant of immunity is so broad and allows for only one statutory exception which is not an issue in this case. So I think this court can resolve the case, based on the plain reading of section two way in conjunction with the language and the purpose language and section one, and the direction by the Florida legislature and Florida statute 375.061 to liberally construe the statute to affect its purpose and here the purpose is to encourage private landowners to make property that the other one is a private property publicly available to the public. So, I think, taken together and considering all those considerations. This court can can can easily resolve the application of the statute in this case, because in this case, I don't think there's any dispute but that the exceptions liability provided by section to see for this included in section one. But of course, this court disagrees. We certainly get guidance from the floor Supreme Court but I, given the clarity and the extent of the broad grant of immunity I don't think it's necessary in this case. A couple of other things I wanted to touch on briefly. The absence of the language will the language of the legislature saw fit to include in three be and that as far as I can tell that language has been in the statute since its inception in 1963 that the inclusion of that language in no way undermines or diminishes the broad grant of immunity, provided by section two way that that section of pride by its express terms applies to persons entering or going on the airwaves. In section one, the statute makes clear that the purpose of the statute is to limit liability to persons using these areas. So there's nothing about the plain language of sections one or two a that in any way. evidence is intent to distinguish between different kinds of invitees because at the end of the day, whether you're a business invitee, or a public invitee. The duty of care remains the same. And the Florida, the Florida legislature and adopting to a expressly displace the common law by rejecting the duty of care that would otherwise apply to an invitee. So let me ask you this, I think you're sort of collapsing. The two points that I was putting to your adversary so setting aside, whether it might be you know sort of business invitees that are excluded. You know, by virtue of the difference in language at a more general level, how do you explain the difference in language, I mean like between sub two and sub three, why would sub three include this sort of cover the waterfront exhaustive. You know serial list and sub to not if it didn't mean in sub to that somebody was excluded you know there's this general principle that where, yes, you know sort of two statutes that are ordinarily understood together one says something and the other doesn't say something we you know we attribute some meaning to that difference. What do you say to that. Well, Your Honor, I tried to come up with an explanation for that and looking at the amendments in 2012 1987 and 2012 1987 didn't change the language at all 2012 didn't make a stylistic change to the language and three be but there is nothing in the various permutations of the statute over the years that provides any guidance or insight into why the legislature included that provision in section three be but did not include it anywhere in section two, but then, but that being the case, I would return to my point that there is nothing about the inclusion of that language, I frankly think that language borders on surpluses because the, the grant of immunity provided by sections to a and for that matter three a are comprehensive. And the fact that the legislature saw fit to expressly displace the common law, with respect to persons covered by the statute is very very telling so I really don't think the language in three I mean I can't explain why it's in three B and not into. But what I can say with a degree of certainty I think is that that language does not undermine the clarity of the language into a. Okay, thank you. All right, well, let me see to make sure I covered all the points. Okay, your honors. For all those reasons we respectfully submit that the district court correctly dismissed this, the Fisher's case for like a subject matter jurisdiction under federal some procedure 12 you want. And we would urge this court to affirm that entirely soundly. I'm Mr Randy thank you very much. Thank you, Mr Greenlee you've got your rebuttal time. Thank you very much. Judge Newsome I'd like to return directly to that. The difference between subsection three a and subsection two. I think the explanation is, and the reason why it was included is, if a state deems the property, so important and so significant that it's going to enter into a written, a written agreement. And if you read the subsection it says where such agreement recognizes that the state is responsible for personal injury loss or damage. Then it drops down and subsection be, then this subsection applies to all persons going on to the area that is subject to the agreement, the subject to the agreement. So, the state is essentially. They're saying we pick up where we pick up the tab and we will pay for the personal injury. Then the landowner is completely immunized. And so that's not the case. I think it represents a policy choice on the part of the legislature to where the land is that significant, like let's say it's like a natural spring or an area of cultural or to further incentivize you to make that land open to the public. And we're going to pick up the bear the cost when somebody sues, then you have full immunity across the board. So that that's what that provision is doing. And you see in in subsection two, they don't have that the area is simply not as significant to the state. And that's why they there's a lesser degree of immunity that's conferred under the statute. That's the only way really to make sense of why they included it in subsection three, but not in subsection two. And as Mr. Granny points out, you know that they opened up the hood, they tinkered with the language, they know very well how to provide that across the board immunity to landowners, but they chose not to. They could have very easily revise the statute while they were, you know what, hey, while we're working on it, while we're tinkering with the language in subsection three, let's just add additional protection to the landowners in subsection two, but they this was an oversight or I don't know, you know, you can't just shrug your shoulders and say I don't know why they did it, it has to mean something. And so what it means is that they did not intend to displace the common law with respect to subsection two that's the only thing that that can mean that's the only plausible explanation I think we do have to make sense of why they would include it in subsection three. Now, with regard to certifying the question. I think that's a very sensible idea. I mean, you know, we are after all we're applying Florida law here and this is an issue of first impression under this statute. Why shouldn't the Florida Supreme Court, be the one to hold forth on what this, you know, they should be the ones to make sense of the statute, not the 11th Circuit we're a federal court and we think our position is that, you know, the modest way to go about things is to allow the Florida Supreme Court to, to tell us what what this statute should what what it does mean. And in closing, I would just like to stress that the status of the entrant has always mattered. It's always matter you mattered in post versus Lumley would versus camp, and even the abdomen decision, the rationale of the decision which is after the to the status of the of the entrant when they made that decision, and that was the whole rationale behind the decision. So we think that the status of the entrant matters. And we think in this particular case, when your boss says you should make yourself at home, use all this property. They owe you a higher duty of care than they otherwise would to members of the general public, which this statute is designed to to cover and immunize suits from. And so for all these reasons if there are no further questions your honors we would ask the court to either a reverse the decision below and allowed the case to proceed on the merits or be certified the question to the Florida Supreme Court. All right, thank you very much, Mr really thank you very much, Mr Randy. Thank you.